**UNITED STATES of America, Plaintiff,**

v.

**DAYS INNS OF AMERICA, INC., et al., Defendants.**

No. 96–2028.

United States District Court, C.D. Illinois, Urbana Division.

March 16, 1998.

Alyse S. Bass, Thomas M. Contois, Dept. of Justice, Civil Rights Div., Disability Rights, Washington, DC, Margarita M. Prieto, U.S. Dept. of Justice, Civil Rights Div. Disability Rights Sec., Washington, DC, Roberta Kirkendall, U.S. Dept. of Justice, Disability Rights Sec., Washington, DC, Jeanine M. Worden, U.S. Dept of Justice, Civil Rights Div., Washington, DC, for U.S.A.

Lorna K. Geiler, Meyer Capel Hirschfeld Muncy, Jahn & Aldeen, Champaign, IL, Gregory Merz, William L. Killion, Troy A. Bader, Gray Plant Mooty Mooty & Bennett, Minneapolis, MN, for Days Inns of America, Inc., Hospitality Franchise Systems, Inc.

## ORDER

BAKER, Senior District Judge.

The United States brought this action alleging violations of the Americans With Disabilities Act (ADA) in the construction of the Champaign, Illinois, Days Inn hotel. The

case is before the court on cross motions for summary judgment. The court now holds as a matter of law that the defendants Days Inns of America, Inc. and its parent company, HFS, Inc., are liable for any violations of the ADA in the construction of the Champaign Days Inn hotel.

### Facts

The following facts are uncontested. HFS, Inc. is the parent company of Days Inns of America, Inc. Days Inns of America licenses the use of its trademark to over 1,700 hotels across the United States. Days Inns of America enters into license agreements with persons or entities who own and operate the individual Days Inn hotels. Days Inns of America provides to its licensees a national reservation system, service marks, marketing systems, franchise services, employee training assistance and other services. Licensees pay fees to Days Inns of America. Licensees are required to maintain certain minimum standards. The license agreement requires that the individual licensee obtain approval from Days Inns of America prior to commencement of construction of an individual hotel. Days Inns of America at times makes comments on individual hotel plans, and may address accessibility for disabled guests with individual hotels.

In order to ensure uniformity and consistency across the nation, Days Inns of America inspects individual hotels several times each year. Additionally, Days Inns of America provides operating manuals to its licensees, including the Planning and Design Standards Manual. The Days Inns of America Planning and Design Standards Manual reflects minimum standards. The Manual is used nationwide, and of course, does not contain individual blueprints for individual hotels. The Manual requires corporate approval of individual hotel plans to ascertain initial compliance with Days Inns of America standards. The Manual includes language assigning the burden of compliance with federal and state regulations to individual licensees.

In the instant case, Days Inns of America entered into a license agreement with Panchel & Patel Inc. for the construction of a Champaign, Illinois Days Inn hotel. Panchel & Patel hired an architect and oversaw construction of the hotel. Panchel & Patel submitted plans to Days Inns of America for review. At one point an HFS Design & Construction Manager reviewed the Champaign construction plans and made suggestions. There was an ongoing interactive relationship between HFS, Days Inns of America and Panchal & Patel during the design and construction of the Champaign Days Inn hotel.

Since its completion, the Champaign hotel has undergone several inspections by Days Inns of America. During these inspections, Days Inns of America checks for compliance in a variety of areas. Panchel & Patel are of course responsible for the day to day maintenance and operation of the hotel, but they are also regulated through their licensing agreement, by Days Inns of America.

### Americans With Disabilities Act (ADA)

The purpose of the ADA is to provide "a clear and comprehensive mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). The courts, in accordance with the mandates of Congress are to work to "end discrimination against individuals with disabilities and to bring persons with disabilities into the economic and social mainstream of American life; to provide enforceable standards addressing discrimination against individuals with disabilities, and to ensure that the Federal government plays a central role in enforcing these standards on behalf of individuals with disabilities." A & P Comm. Print 1990(28A) (U.S. House of Representatives Committee on Education and Labor Report)

■ The Congress found that "some 43,-000,000 Americans have one or more physical or mental disabilities, and this number is increasing." A & P 136 Cong. Record D623. "Individuals with disabilities have been denied for so long, services, jobs, housing, transportation, hotel rooms ..." A&P Comm. Print 1990(28B) (statement of Representative Jeffords). "Disabled people are frequently frustrated by the inaccessibility of

hotel rooms. Very few rooms, even in new hotels are made fully accessible." A&P 136 Cong.Rec. D646 (statement of Representative Hayes). The ADA was enacted to address the discrimination against disabled Americans in all aspects of their lives, including eliminating discrimination in hotel accommodations.

### Design and Construct

■ Congress' concern that all newly constructed hotels be accessible was codified in § 303 of the ADA:

§ 12183. New construction and alterations in *public accommodation and commercial facilities*.

(a) Application of term

Except as provided in subsection (b) of this section, as applied to public accommodations and commercial facilities, discrimination for purposes of section 12182(a) of this title includes—

(1) a failure to *design and construct* facilities for first occupancy later than 30 months after July 26, 1990, that are readily accessible to and usable by individuals with disabilities, except where an entity can demonstrate that it is structurally impracticable to meet the requirements of such subsection in accordance with standards set forth or incorporated by reference in regulations issued under this subchapter;

42 U.S.C. § 12183 (emphasis added).

Both parties and the court agree that the Champaign Days Inn hotel is a "new construction" of a "commercial facilit[y]" under 42 U.S.C. § 12183 (§ 303). Liability under that statutory section is assigned to those who "design and construct" the facility. The first statutory interpretation issue is, therefore, did the corporate defendants, Days Inns of America and HFS, "design and construct" the Champaign Days Inn hotel within the meaning of the ADA.

■ Days Inns of America designs and constructs hotels in that it carefully licenses and regulates and contributes to the planning of, and building of, hotels across the nation. Days Inns of America has much to do with the design and construction of individual hotels such as the Champaign, Illinois Days Inn

hotel. Days Inns of America cannot shirk responsibility for following federal law in its ongoing involvement in the design and construction of hotels. "Design and construct" is a broad sweep of liability, it includes architects, builders, planners, and most definitely national hotel licensing corporations which exist for the sole purpose of ensuring that new hotels are designed and constructed in accordance with acceptable standards. The defendants in this case, Days Inns of America and its parent, do indeed "design and construct" hotels.

The plain language of § 303 states that new construction of commercial facilities must be "readily accessible to and usable by individuals with disabilities." If newly constructed commercial facilities are not accessible then those who designed and constructed them are in violation of the law. The recently constructed Champaign Days Inn hotel allegedly is not readily accessible and usable by individuals with disabilities, and therefore those responsible for its design and construction are liable under the ADA. The defendants Days Inns of America and its parent corporation, HFS, fall easily into the "design and construct" language of § 303.

The court notes that it disagrees with the analysis of the factually distinguishable case of *Paralyzed Veterans of America v. Ellerbe Becket Architects*, 945 F.Supp. 1 (D.D.C. 1996) *aff'd*, 117 F.3d 579 (D.C.Cir.1997) *cert. denied*, —— U.S. ——, 118 S.Ct. 1184, 140 L.Ed.2d 315 (1998). That case found architects not liable under § 303 because the architects only designed and did not construct the inaccessible facility. "The phrase 'design and construct' is distinctly conjunctive. It refers only to parties responsible for both functions." *Paralyzed Veterans of America*, 945 F.Supp. at 2. This court finds such a narrow, literal reading of the statute inappropriate to carry out the intent of the ADA. *Paralyzed Veterans* correctly notes that the "and" in "design and construct" is a conjunctive term, but does this obvious grammatical truth necessarily require a narrow reading of liability? "Design and construct" may be read conjunctively without being read narrowly. "Design and construct" enforce each

other in that those who design or construct also construct and design.

In the case at bar, a conjunctive reading of "design and construct" does not exonerate Days Inns of America and HFS. These corporate defendants were involved contractually and in a supervisory role with both the design of the Champaign Days Inn hotel and its construction. The record shows the corporate defendants reviewed the design in the planning stage of the project and that the corporate defendants continued to be involved through review and correspondence throughout the construction of the hotel.

### *Own, Lease or Operate*

■ The defendants argue that the provisions of § 303 as to accessibility of new construction are ambiguous and therefore require incorporation of the "own, lease or operate" language of a separate statutory provision— § 302's public accommodations provisions:

> § 12182 Prohibition of discrimination by *public accommodations*
>
> (a) General rule
>
> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who *owns, leases (or leases to) or operates* a place of public accommodation.

42 U.S.C. § 12182 (emphasis added).

Congress did not choose to include the "own, lease or operate" language into the new construction of commercial facilities provisions of § 303. The inclusion of that language in the new construction of commercial facilities provisions would negate the plain language of the statute and would require a Congressional intent analysis on the part of the court. There are two non-binding cases which use the "own, lease or operate" language from § 302 to restrict new construction of commercial facilities liability under § 303. *See, Neff v. American Dairy Queen,* 58 F.3d 1063 (5th Cir.) *cert. denied,* 516 U.S. 1045, 116 S.Ct. 704, 133 L.Ed.2d 660 (1996) (holding a national licensing corporation not

liable under the ADA because it did not own or operate a local franchise); *Paralyzed Veterans of America v. Ellerbe Becket Architects,* 945 F.Supp. 1 (D.D.C.1996) *affd.,* 117 F.3d 579 (D.C.Cir.1997) *cert. denied,* —— U.S. ——, 118 S.Ct. 1184, 140 L.Ed.2d 315 (1998) (holding architects not liable under the ADA because they do not own, lease or operate).

The court finds the two cases rejecting judicial transference of § 302's "own, lease, or operate" into § 303 more persuasive. *Johanson v. Huizenga Holdings, Inc.,* 963 F.Supp. 1175 (S.D.Fla.1997); *United States v. Ellerbe Becket, Inc.,* 976 F.Supp. 1262 (D.Minn.1997). In *Johanson* the district court wryly noted that incorporating restrictive "own, lease or operate" language "would effectively eliminate § 302's coverage of commercial facilities, despite the language in § 302 which explicitly names commercial facilities in connection with the new construction mandate." 963 F.Supp. 1175, 1178 (S.D.Fla.1997). Similarly, in *Ellerbe Becket,* the court noted that incorporating a restrictive reading of the "own, lease or operate" language results "in an inexplicable gap in coverage of a class of building Congress clearly intended to be covered by the accessibility standards for new construction." 976 F.Supp. at 1267. The defendants in the instant case, like the defendants in *Johanson* and *Ellerbe Becket* argue for a judicial transference of statutory language which when accomplished would make it "conceivable that no entity would be liable for construction of a new commercial facility which violates the ADA." *Ellerbe Becket,* 976 F.Supp. at 1268 (quoting *Johanson,* 963 F.Supp. at 1178).

■ In the alternative, even if Congress did intend "own, lease or operate" to apply to new construction of commercial facilities under § 303, that does not necessarily allow Days Inns of America or HFS, Inc. to escape liability. It is appropriate to find Days Inns of America and HFS liable as operators of the Champaign Days Inn hotel. There is legislative history to support that corporate franchising chains are indeed liable under the "own, lease or operate" language of the statute.

In a House of Representatives Committee on Education and Labor Report section 302's

"own, lease or operate language" is said to "clarify that the owner of a public accommodation is liable for discriminatory policies. For example, if the corporate headquarters for a chain of restaurants designs all new restaurants to contain barriers to access, an injunction could be brought against the corporation to enjoin the inaccessible new construction." A&P ADA Comm. Print 1990(28A). In a congressional debate, Representative Fish stated in reference to § 302 that "the amendment (§ 302) also makes it clear that the owner and operator of the public accommodation are prohibited from discriminating in accordance with this title. Corporate headquarters would be covered to the same extent as the operator of the accommodation. For example, corporate headquarters could not continue to design new stores in an inaccessible manner in violation of § 303." A&P 136 Cong. Record D646.

In light of the congressional record's clear statement that § 302's "own, lease or operate" language includes corporate headquarters, it is untenable to argue that Congress intended the instant corporate defendants to be free from liability. Corporate headquarters, such as Days Inns of America and HFS should "not continue to design new stores [hotels] in an inaccessible manner in violation of § 303." A&P 136 Cong. Record D646 (statement of Representative Fish).

*Conclusion*

The uncontested facts in this case support holding as a matter of law, that the defendants, Days Inns of America, Inc. and its parent company, HFS, Inc., are liable for any violations of the ADA in the construction of the Champaign, Illinois, Days Inn hotel. The case will proceed on the factual issues of identifying specific violations of the ADA's accessibility requirements and assessing damages.

IT IS THEREFORE ORDERED THAT:

(1) The defendants' motion for summary judgment (docket # 53) is denied.

(2) The plaintiff's motion for summary judgment (docket # 49) is granted in part as to the issue of liability.

(3) The case is set for a Rule 16 hearing for further scheduling and case management on April 16, 1998 at 1:30 p.m. before Judge Baker, United States District Court, Urbana, Illinois.